**In re EDUCATIONAL TESTING SERVICE PRAXIS PRINCIPLES OF LEARNING AND TEACHING: GRADES 7–12 LITIGATION.**

**MDL No. 1643.**

United States District Court,
E.D. Louisiana.

Aug. 14, 2007.

---

### *ORDER AND REASONS*

SARAH S. VANCE, District Judge.

Before the Court is Lead Counsel's motion to approve the fee award proposed by the Attorneys' Fee Compensation Committee in this case. Three objections are also before the Court. For the following reasons, Court GRANTS Lead Counsel's motion.

## I. BACKGROUND

This multidistrict litigation involved individual and class claims of negligence and breach of contract against Educational Testing Services (ETS), the world's largest private educational testing organization. More than 1,500 test-taker plaintiffs alleged that ETS incorrectly scored certain teacher certification exams between 2003 and 2004.[1] In early 2006, the parties reached a settlement that required ETS to pay $11.1 million into a common fund. Under the terms of the agreement, the Court appointed a Special Master to allocate proceeds of the fund to both claimants and counsel. The Special Master initially recommended that the common fund be distributed as follows: 50.5 percent to plaintiffs; 40 percent for attorneys' fees; 7 percent for administrative costs and taxes;

---

1. A more thorough description of the background of this case can be found in the Court's Final Approval of Settlement Order, R. Doc. 174 at 2–15.

and 2.5 percent for litigation costs. The Special Master also recommended that the named class plaintiffs receive an incentive fee award of $2,000 each.

Two plaintiffs objected to the Special Master's recommendation. The Pennsylvania-based law firm of Smolow & Landis, which is now one of the three objectors to the proposed distribution of attorneys' fees, represented both of these individuals. The plaintiffs lodged seven objections concerning (a) the adequacy of the settlement and the procedure for formulating the fund allocation proposal; (b) the proposed incentive fee; and (c) the proposed attorneys' fees.

In its order finally approving the settlement, the Court rejected the plaintiffs' arguments about the adequacy of the settlement and incentive awards. The Court, however, did reduce the proportion designated for attorneys' fees from 40 percent of the total ($4,440,000.00) to 29 percent of the total ($3,219,000.00). But in so doing, the Court explained that under the law it "must independently analyze the reasonableness of the attorneys' fees proposed in the settlement agreement" and that it "did not require [Smolow & Landis's] objection to recognize that the proposed fee was too high."[2] The Court ordered counsel to confect an agreement for the distribution of the award among the group of plaintiffs' counsel. The Court further specified that if counsel could not agree to a fair distribution of the fees, then it would appoint a Special Master to assist the Court in determining an appropriate distribution.[3]

Plaintiffs' counsel then formed a three-person Attorneys' Fee Compensation Committee (AFCC) to determine how to allocate their share of the common fund. The Committee was chaired by Lead Counsel, Dawn Barrios, and included Liaison Counsel, Richard Arsenault, and Philip Bohrer. Pursuant to plaintiffs' motion, the Court had earlier ruled that plaintiffs' counsel, in addition to Lead and Liaison Counsel and members of the Plaintiffs' Steering Committee, "who perform work and contribute to the costs of the litigation, as long as they [provide] a common benefit and are acting under the authorization, request, or direction of Lead Counsel or Liaison Counsel, will also be entitled to seek reimbursement for costs incurred and compensation for services rendered."[4] To facilitate accurate documentation of such time, the Court ordered counsel to file timesheets on the 15th of each month with Lead Counsel, who in turn was instructed to file a compiled report with the Court each month.

The AFCC prepared a protocol for distributing fees distinguishing between two types of counsel involved in the litigation: (1) attorneys from 17 firms who served as "Common Benefit Counsel" and (2) lawyers in 30 firms who served as "Individual Claimants' Counsel." The basic difference between the two is that the former performed work on behalf of plaintiffs as a whole, and the latter worked on behalf of particular claimants. There is some overlap between these two categories, with some attorneys seeking awards for both common benefit and individual claimant work. For instance, Smolow & Landis has sought an award for both types of work. In general, the protocol seeks to compensate Common Benefit Counsel in proportion to the work they performed that meaningfully advanced the position of the plaintiffs as a whole, while also fairly rewarding the value of the work performed by Individual Claimants' Counsel. Relevant factors identified by the committee

---

**2.** R. Doc. 174 at 41, 56.

**3.** *See id.*

**4.** Order Amending Pretrial Order # 2, R. Doc. 34 at 1–2.

include: meaningful participation in status conferences, discovery, preparation of expert witnesses, preparation of pleadings and motions, committee work, developing and coordinating litigation and settlement strategy, providing assistance to the Special Master and Court Appointed Disbursing Agent (CADA), and the total number of hours spent on the litigation.

The AFCC notified counsel of the protocol and requested that counsel file brief memoranda detailing their common benefit contribution to the litigation, along with any work performed on behalf of individual claimants. The AFCC represents that although Smolow & Landis raised concerns about the idea of having a Special Master propose a resolution of disputes over fees, no one objected to the protocol's substantive criteria.[5] None of the objectors disputes this statement.

After the AFCC received Common Benefit Counsel's reports, it evaluated the extent to which the self-reported "Submitted Common Benefit Time" was for the common benefit, was reasonable, authorized by Lead or Liaison Counsel per the Court's order,[6] non-duplicative, and advanced the litigation. Based on these factors, the AFCC calculated a figure of "Revised Common Benefit Time" for each eligible counsel. It then created a matrix in which it compared Submitted Common Benefit Time and Revised Common Benefit Time. After ranking each firm in accordance with its contribution, the AFCC generated a proposed award for each firm by multiplying the Revised Common Benefit Time by a rate of $250.00 per hour, which was the rate that the Court determined in approving the settlement agreement. The com-

mittee then applied to this figure a qualitative multiplier of between 0.8 and 1.7 that reflected the committee's evaluation of counsel's contribution to the case.

With respect to the work of Individual Claimants' Counsel, the AFCC set a compensation rate of 14.5 percent of their respective clients' awards. The committee began its calculation from the baseline of 29 percent, the proportion of the common fund that the Court set aside for attorneys' fees. It then evaluated the extent to which Individual Claimants' Counsel facilitated the recovery by individual plaintiffs. The Committee concluded that "the bulk of the work performed on behalf of each claimant was in connection with the submission of claim forms to the Special Master." [7] The AFCC then examined the extent to which Common Benefit Counsel helped secure awards for individual plaintiffs and concluded that their work was indispensable in this regard. In light of the assistance that Common Benefit Counsel provided to individual claimants, the committee determined that an award of 50 percent of 29 percent, or 14.5 percent, of a claimant's award would equitably compensate individual counsel for their work.

The AFCC proposes to allocate a total of $2,723,087.48 among 17 firms as Common Benefit Counsel and $541,643.41 among 30 firms serving as Individual Claimants' Counsel.[8] The AFCC notified counsel of their awards in early April 2007. The committee asked counsel to complete attached statements of acceptance if they were satisfied with the award. If counsel were not satisfied with their share, the AFCC requested they so advise the com-

---

**5.** *See* Pls.' Mot. Approve Attorneys' Fees at 4.

**6.** *See* Order Amending Pretrial Order # 2, R. Doc. 34 at 1–2.

**7.** Lead Counsel's Motion to Approve Attorneys' Fees, R. Doc. 266 at 5.

**8.** The sum of these totals ($3,264,730.98) exceeds the amount that the Court set aside for attorneys' fees in August 2006 because of interest accrued while the CADA has held these funds.

mittee within five days of receiving notice. On May 24, 2007, Lead Counsel filed a motion to approve the proposed attorneys' fees.

On June 5, 2007, the Court issued an order setting a deadline of June 11, 2007 for the submission of any objections to the AFCC's proposal.[9] Of the 47 firms seeking an award as Common Benefit Counsel and/or Individual Claimants' Counsel, only three filed objections that are before the Court.[10] Smolow & Landis argues that its proposed award neither accurately reflects the amount of common benefit work it performed, nor takes into account its arguments that the Special Master's initial proposal of a 40 percent attorneys' fee award should be reduced. Two other counsel filed late objections. Mark Smith, an Individual Claimants' Counsel, filed an objection to the distribution of only 14.5 percent of his client's award on June 14. On July 9, Joseph Bruno filed an objection to the rate at which he was compensated for common benefit work. The Court initially stated that it would appoint a Special Master to recommend a resolution of any fee disputes between attorneys. But in light of the small number of objections, it is unnecessary to do so, and the Court will resolve these disputes in the first instance.

## II. ANALYSIS

### A. Smolow & Landis's Fee Award

The firm of Smolow & Landis represented two of the individual plaintiffs in this litigation, Michelle Kochensky and Brian Welsh.[11] The AFCC has proposed an award of $4,875.00 for 19.5 hours of Revised Common Benefit Time. Smolow & Landis disputes this award, essentially arguing that the committee has failed to pay it on an hour-by-hour basis. The firm contends it is entitled to a total award of $262,245.00 for its common benefit work and the objection it lodged against the Special Master's initial fee proposal. The Court analyzes these arguments in turn.

1. Smolow & Landis's Common Benefit Time

Smolow & Landis claims that it performed a total of 348.8 hours of common benefit work as opposed to the 19.5 hours recognized by the AFCC. The firm contends that if the Court uses the rate of $250.00 that it calculated in the order approving settlement, then Smolow & Landis deserves $87,200.00 for common benefit work instead of the $4,875.00 allocated by the committee. Additionally, even though even though it calculates its requested award using the Court-approved rate, Smolow & Landis asserts in a footnote that the lengthy affidavit attached to its objection justifies a higher rate but provides no further explanation.

As an initial mater, the Court declines to revisit the issue of which hourly rate is appropriate in this case. The reasons for selecting $250.00 are fully forth in the order approving settlement.[12] Nothing Smolow & Landis has submitted justifies altering the rate included in the order approving settlement.

Smolow & Landis alleges that it performed the following work for the common benefit:

investigating, researching and filing the *Kochensky* case on July 21, 2004—one of

---

9. *See* R. Doc. 267 at 2.

10. Rebecca Cunard, an Individual Claimant's Counsel, also filed a timely objection, which she later withdrew. *See* R. Doc. 287 (order granting motion to dismiss Cunard objection).

11. Smolow & Landis does not contest its Individual Claimant Counsel award of $8,363.89. The firm received 14.5 percent of the $57,682.00 awarded to its two individual clients, Kochensky ($40,720.00) and Welsh ($16,962.00).

12. *See* R. Doc. 174 at 53–55.

the earliest cases filed; conducting a prompt and thorough fact investigation in the nature of ETS's false test scores and available proofs; preparing and filing an amended complaint in the United States District Court for the Eastern District of Pennsylvania; consulting potential expert witnesses in the field of education and psychological testing; appearing before the MDL panel in Dallas, Texas; attending hearings in the Eastern District of Louisiana in January and June 2005; preparing discovery responses for Kochensky as named plaintiff; pursuing applications with the Pennsylvania Department of Education under the Pennsylvania Right to Know Law; and assisting class counsel on the issue of waiver of claims not asserted in the consolidated complaint.[13]

Significantly, however, it does not explain *how* or *why* this work was for the common benefit.

Smolow & Landis argues that Lead Counsel previously recognized Smolow & Landis's submitted time as being for the common benefit and should now be estopped from treating it differently. In support of this argument, Smolow & Landis points to the monthly timesheets that it submitted to Lead Counsel, who, in turn, submitted a compiled time report for all counsel to the Court on a monthly basis. Smolow & Landis contends that Lead Counsel, by submitting monthly time sheets to the Court, effectively affirmed the verity of Smolow & Landis's time reporting and certified it as being for the common benefit. Smolow & Landis further argues that Lead Counsel "implicitly, if not explicitly, vouched for the fairness

and reasonableness of this [self-reported] time," [14] by representing in its brief in support the proposed fee award that the attorneys' hours submitted to the Court were solely for "common benefit" work.[15] Smolow & Landis argues that Lead Counsel therefore should be judicially estopped from contesting that the 348.8 hours of time submitted by Smolow & Landis as common benefit time actually benefitted the common enterprise.

■■■ The Fifth Circuit has explained that courts must consider three factors in deciding whether to apply the doctrine of judicial estoppel. *See In re Ark–La–Tex Timber Co.,* 482 F.3d 319, 332 (5th Cir. 2007). They include: "(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citing *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). After reviewing the parties' arguments and the procedural history of this case, the Court finds that none of these factors weighs in favor applying the doctrine of judicial estoppel.

First, Lead Counsel has not taken clearly inconsistent positions on the amount of common benefit time performed by Smolow & Landis. There is no indication that Lead Counsel ever explicitly represented to the Court in its monthly filings of expense summary reports that it had reviewed and certified the self-reported time of counsel as actual common benefit time

---

13. *See* R. Doc. 272 at 1.

14. Brief in Support of Requested Smolow & Landis Fee Award, R. Doc. 272 at 2.

15. Memorandum in Support of Class Counsel's Motion for Award of Attorneys' Fees and Costs and Approval of Incentive Award to Class Representatives, R. Doc. 154–2 at 23–24.

for the purpose of the ultimate distribution fees among counsel. It cannot be inferred from the terms of the Court's time-reporting order that the monthly time reports filed with the Court constitute such approval or similar certification. The Court's order establishing the time reporting schedule stated that "as long as they are providing a common benefit and are acting under the authorization, request, or direction of Lead Counsel or Liaison Counsel, [plaintiffs' counsel] will be entitled to *seek reimbursement* for costs incurred and compensation for services rendered." [16] The order further provided that "each firm seeking a fee award (*or approval*) and reimbursement of expenses shall submit time and expenses" on a monthly basis to Lead Counsel, who shall then report the same to the Court.[17] All that this order establishes is the criteria for eligibility to seek reimbursement or compensation. Further, the terms of the order expressly apply to counsel *seeking approval* for their work. Nothing in the language of this order suggests that self-reported common benefit time would necessarily be considered as such for the purpose of fee distribution. On the contrary, the language regarding approval anticipates some other process of review or evaluation of the submitted time.

Nor does the Court find persuasive Smolow & Landis's argument that Lead Counsel essentially certified all of the self-reported common-benefit time for purposes of fee allocation by the statements in its brief in support of the proposed attorneys' fees. Again, under the Court's time-reporting order, counsel were entitled to *seek* reimbursement or compensation for approved or authorized common benefit work and had to file time sheets reflecting the work that they viewed as being for the

common benefit or for which they sought approval. Class counsel did not certify these hours. Nor did the Court ask it to. Thus, Class Counsel has not taken a position clearly inconsistent with an earlier position.

With respect to the second *Ark–La–Tex Timber* factor—whether Class Counsel persuaded the Court to accept these hours as certified common benefit hours—the Court explained in its order approving settlement that it used the aggregate number of hours to "calculate a rough lodestar for purposes of checking the percentage fee award." [18] Thus, the number of reported hours represented only an approximation of the number of common benefit hours worked, and it was used only to test the reasonableness of the percentage fee award. Substitution of the lower number of common benefit hours recognized by the AFFC would reduce the lodestar calculation by less than five percent. Since the Court based the fee award on a percentage calculation, Lead Counsel's submission was only an estimate, and the lodestar was used only as a cross-check, the Court did not rely on Class Counsel's data for precise information or as the determining factor in its analysis. Thus, the second factor under *Ark–La–Tex Timber* does not count in favor of applying the doctrine of judicial estoppel in this case.

Third, the Court has already determined that Class Counsel has not sought to assert inconsistent positions. But it still considers whether Class Counsel would derive an unfair position from doing so. The Court notes that the AFCC, which calculated the proposed attorneys' fees, was comprised of Lead Counsel and Liaison Counsel. These individuals were therefore tasked with awarding themselves fees as well as other plaintiffs' counsel. The

**16.** *See* Order Amending Pretrial Order # 2, R. Doc. 34 at 1–2 (emphasis added).

**17.** *See id.* at 2 (emphasis added).

**18.** R. Doc. 174 at 53.

Court is sensitive to the possibility that such an arrangement could encourage self-dealing or a lack of impartiality. But Smolow & Landis has presented no evidence that indicates that the AFCC members acted improperly. On the contrary, that the vast majority of counsel seeking either a common benefit or individual claimant award have accepted the committee's determination is telling of the fairness of the committee's approach.

With respect to whether the character of the work that Smolow & Landis alleges it performed for the common benefit, Smolow & Landis does not explain why the Court should consider this work as being for the common benefit. It merely asserts that it was. It makes no attempt to distinguish between work performed on behalf of its individual clients and work completed for the common benefit. Nor does it explain why the AFCC's evaluation that it performed only 19.5 hours of common benefit work is incorrect. Still, in the interest of justice, the Court has undertaken an examination of the time sheets submitted by Smolow & Landis, its description of work performed, and the legal issues that proved important in this litigation to determine whether the AFCC treated the firm unfairly. Since the parties reached settlement on February 10, 2006, and, as explained *infra*, Smolow & Landis's objections to the settlement after this date do not warrant an award of additional attorneys' fees, the Court confines its analysis to work performed by Smolow & Landis before February 10, 2006.

On July 21, 2004, Smolow & Landis filed a class action in Pennsylvania state court in which Michelle Kochensky was the named plaintiff. A month later, Kochensky's complaint was removed to federal court. On December 17, 2004, the judicial panel on multidistrict litigation transferred the *Kochensky* case (which was renumbered as Civ. A. No. 04–3443), along with eight other cases, to the Eastern District of Louisiana. On January 18, 2005, Ronald Smolow, named partner in Smolow & Landis, unsuccessfully applied for appointment to the Plaintiffs' Steering Committee (PSC).

For all of the work completed during the period from the inception of the cases through January 31, 2005, Smolow & Landis reported 191.1 attorney hours. But during this period, Smolow & Landis was performing only individual client work. It has not explained how its work on Kochensky's claims ultimately translated into common benefit work. The AFCC determined that only 8.4 hours spent on an initial conference with the Court was compensable common benefit time during this period. Class Counsel explains that the AFCC excluded the remaining 182.7 hours because they were devoted to filing Kochensky's individual pleadings, unsuccessful efforts to join the PSC, and research on Pennsylvania-specific issues. The *Kochensky* case was never certified as a class action. Further, the Court has reviewed the motions filed by parties in this case and cannot locate any Pennsylvania-specific issues of importance, other than a three-sentence paragraph on Pennsylvania choice-of-law rules included in the plaintiffs' response to ETS's motion to dismiss.[19] That brief also contained similar paragraphs for every other jurisdiction implicated by the litigation. Moreover, this brief was filed on July 18, 2005—more than two months after the Court granted Smolow & Landis's motion to segregate Kochensky's claims.[20] Time and resources

---

19. *See* Plaintiffs' Supplemental Memorandum on Choice of Law Issues Submitted Opposition to Defendant's Partial Motion to Dismiss, R. Doc. 100 at 22.

20. Smolow & Landis moved to segregate on June 11, 2005, and the Court granted its motion on June 13. *See* R. Docs. 70, 71.

spent on segregation hardly constitute common benefit work. In the absence of any clear statement by Smolow & Landis about how or why all of its claimed time was for the common benefit and the inability to draw any plausible inferences that its research into Pennsylvania-specific matters significantly contributed to the common benefit, the Court finds no error in the AFCC's evaluation.

After Smolow & Landis's initial report of 191.1 hours, the firm submitted an additional 159.2 attorney hours to Class Counsel between February 1, 2005 and May 30, 2006. Of this total, the AFCC credited Smolow & Landis with 10.1 hours of compensable time. The AFCC determined that the excluded time consisted variously of individual client issues, administrative matters, review of previously filed motions and court orders, and issues relating to the segregation of the claims of their individual client, Kochensky. Although Smolow & Landis makes no effort to explain their time sheets or how the entries in them reflect common benefit time, the Court has reviewed them and finds no basis for second-guessing the evaluation of the AFCC.

Smolow & Landis's timesheet for the month of May 2005 is illustrative. For that month, the firm reported a total of 28.7 common benefit attorney hours and 1.0 hour of paralegal work for 29.7 hours total. The AFCC did not recognize any of this work as common benefit time. In its summary description of attorney hours, the firm accounted for 20.8 hours spent on "pre-trial pleadings and motion," 7.1 hours on discovery, and 0.8 hours on "case assessment, development, and administration." One hour of paralegal work was also spent on administrative matters. In the breakdown of its reported hours, however, Smolow & Landis's records do not support its assertion that it devoted all of this time to the common benefit.

For the 1.8 hours devoted to administrative matters, the firm's records show that the 1.0 hour of paralegal work was spent on preparing the *billing* for work completed the previous month. It is dubious at best that the preparation of a past billing statement advanced the position of the plaintiffs as a whole. The 0.8 of attorney hours included in this category were various ous characterized as "general," "check time and expense report," "rev new tag along cases," and "REVIEW ATTY EMLs, JOINT STATUS REPORT." It is not clear why this activity was for the common benefit, and Smolow & Landis makes no attempt to so explain.

Of the 20.8 hours spent on apparent substantive work of preparing pre-trial motions and pleadings, none appears to be for the common benefit. According to the firm's records, they are either duplicative or related to individual claimant work. For example, Smolow & Landis tallies 0.1 hours on May 15, 2005 for "REVIEW ORDER–SEGREGATED CLAIMS," and 0.2 hours on May 25, 2005 for "REVIEW BRIEFS–SEGREGATED KOCHENSKY CLAIMS." This work appears to be in connection with the Court's May 13, 2005 order segregating the claims of Michelle Kochensky—Smolow & Landis's *individual client*. The firm has not explained why this work was for the common benefit. Additionally, the firm reports 16.0 hours of work under the banner description of "MOTION TO SEGREGATE" during the month of May 2005. By its very title, this work was performed for the firm's individual client, and Smolow & Landis offers no explanation for why the Court should consider it otherwise. The firm reports an additional 3.7 hours under the vague descriptions of "MOTIONS," "MOTIONS TO DISMISS," "OTHER MOTIONS," and "PLEADINGS." Within these accounting records, the firm claims as common benefit time, 0.2 hours for a memo to "dawn,"

presumably Lead Counsel Dawn Barrios, on amending the Kochensky complaint, another 0.6 hours on work related to the segregation of Kochensky's claims, 2.0 hours reviewing an amended complaint, another 0.8 hours reviewing ETS's pleadings, and 0.1 hours reading emails from Liaison Counsel. It is not apparent how any of this work was for the common benefit, and the descriptions suggest it was related Smolow & Landis's individual claimant work.

Finally, Smolow & Landis claims it devoted 7.1 hours in May 2005 to work that it generally describes as discovery and interrogatories. Much of the individual notations appear to relate to individual client work (e.g., 0.2 hours on May 18 for "memo to clt..req test report from 2004" and 0.4 hours on May 5 to "rev responses from clt").

■ In sum, Smolow & Landis alleges that it performed nearly 350 hours of common benefit work and was paid for roughly only 20. But the firm neither explains how the hours it submitted to Class Counsel were for the common benefit, nor offers any reasons why the committee's determination is incorrect. In reviewing Smolow & Landis's arguments and its submitted records, the Court is aware of the complexity of coordinating the work of multiple counsel in multidistrict litigation and that counsel may disagree on what work is for the common benefit. But asserting that work is for the common benefit does not make it so. Smolow & Landis has not provided any explanation of why its work that appears by the firm's description to be on behalf of their individual client was for the common benefit. Accordingly, the Court affirms the AFFC's allocation of common benefit fees.

#### 2. Smolow & Landis's Objections to the Special Master's Attorneys' Fee Proposal

Smolow & Landis also contends that it obtained significant benefits for the class as a whole by objecting to the Special Master's initial proposal that 40 percent of the common fund be awarded as attorneys' fees. The Court did reduce this proportion to 29 percent. Therefore, Smolow & Landis argues, it should be compensated for the benefits that accrued to the claimants as a whole. Specifically, it argues that its briefing in connection with this objection—the only one of seven objections offered by Smollow & Landis that the Court acknowledged as meritorious—resulted in a classwide gain of $1.221 million. Using the same formula employed by the AFCC to calculate Individual Claimant Counsel awards, Smollow requests 14.5 percent of this amount, or $177,045.00.

■ Smolow & Landis cites to the statement in *Feinberg v. Hibernia Corp.*, 966 F.Supp. 442, 455 (E.D.La.1997) (Berrigan, J.), that "helpful" objections to proposed attorneys' fees should be rewarded for the proposition that it is entitled to compensation for its work on the attorneys' fees objection. The Court agrees with this statement, but Smolow & Landis's brief did not analyze any complicated legal problems or bring clarity to confusing sets of facts. As noted, *supra*, and in the order approving settlement, the Court has an independent obligation to analyze the reasonableness of attorneys' fees in any class settlement agreement. *See Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849–50 (5th Cir.1998); *see also* Fed.R.Civ.P. 23(e). In its objection, Smolow & Landis cited the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), for the twelve factors courts should consider in evaluating the reasonableness of attorneys' fees.[21] The Court also cited

---

**21.** *See* Kochensky Objection to Proposed Set- tlement, R. Doc. 156 at 20–27.

directly to *Johnson* and more recent Fifth Circuit caselaw expounding on the *Johnson* factors. *See Von Clark v. Butler,* 916 F.2d 255, 258 n. 3 (5th Cir.1990). This case law was already well-known to the Court. Despite identifying the legal standard, Smolow & Landis did not present any particularly helpful or illuminating arguments in its brief on the issue of attorneys' fees. Indeed, in the one area in which a thorough examination of the facts and prevailing jurisdictional norms might have assisted the Court—the issue of what is the customary fee in similar cases—Smolow & Landis added little to no value. Although it acknowledged that the litigation stemmed from nineteen jurisdictions, it chose not to "survey[ ] contingency fees and hourly rates in all of these jurisdictions with respect to handling individual claims for breach of contract or misrepresentation." [22] Instead, it merely stated its general experience with contingency awards in Pennsylvania. Smolow & Landis's briefing provided little, if any, guidance on the issue of whether the proposed attorneys' fees were reasonable. Therefore, it does not warrant an additional award for this work.

### B. The Late Objections

As noted, *supra,* Mark Smith and Joseph Bruno filed their objections to the proposed allocation late. The Court specified that all objections were due by June 11, 2007. Smith did not file his until June 14, and Bruno did not file his until July 9—nearly a month past the deadline. Neither counsel filed a motion to extend the deadline or a motion for leave to file past the deadline. Indeed, neither even addresses his tardy filing.

All counsel were initially notified of their proposed fee awards by the AFCC in early April 2007. The AFCC requested that counsel lodge any objections with the committee within five days of receiving notice. Two months later the Court entered its order regarding the schedule for filing objections. Neither Smith nor Bruno contends that he did not receive a letter from the AFCC or was unaware of the June 11 deadline. Counsel had ample time to file objections, and the deadline was clear. Smith and Bruno failed to meet it. Accordingly, the Court dismisses their objections as untimely.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Lead Counsel's motion to approve the proposed allocation of attorneys' fees. IT IS FURTHER ORDERED that the Court Appointed Disbursing Agent shall distribute costs and fees to all counsel pursuant to terms established by the Attorneys' Fee Compensation Committee.